```
               UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF TENNESSEE
                    NASHVILLE DIVISION

ANDRE JOHNSON,                  )
                                )
        Petitioner,             )    CASE NO. 3:06-0763
                                )    (CRIMINAL CASE
    v.                          )    NO. 3:02-00121)
                                )    JUDGE ECHOLS
UNITED STATES OF AMERICA,       )
                                )
        Respondent.             )
```

**MEMORANDUM**

Pending before the Court is Petitioner Andre Johnson's "Motion to Vacate, Set Aside, Reverse, or Correct Sentence Pursuant to Title 28 United States Code Section 2255." (Docket Entry No. 1). Also pending is Petitioner's "Motion for Resentencing Upon Invalidating of Prior Conviction Used to Enhance Sentence" (Docket Entry No. 2). The Government has filed a response in opposition to both motions. (Docket Entry No. 7).

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On July 24, 2002, a grand jury returned a three-count Indictment against Petitioner relating to his possession and sale of crack cocaine. The Indictment arose as a result of an investigation during October 2001 by the Tennessee Bureau of Investigation ("TBI") and the Murfreesboro Police Department.

On October 23, 2001, Petitioner sold approximately two ounces of crack cocaine to an undercover TBI agent. That transaction, which formed the basis for Counts One and Two of the Indictment,

was video-recorded and audio-taped and the buy money was photocopied.

Two days later, agents searched Petitioner's residence and found 244 grams of cocaine (including a bag containing 14.3 grams of crack cocaine) and electronic scales, pots, and pans containing cocaine residue. Additionally, the agents found a 9mm handgun and $7,000.00 in cash, including the buy money. The discovery of the cocaine during the search formed the basis for Count Three of the Indictment.

The cocaine from the October 23, 2001 transaction was sent to the TBI crime laboratory where it was examined by Donna Flowers ("Flowers"), a forensic scientist by education and training, who had performed drug analysis for twelve years. The cocaine was examined on January 23, 2002 and found to be 33.1 grams of a substance containing cocaine. At that time Flowers did not test whether the substance was in fact crack cocaine because the majority of drugs submitted to the TBI lab are for state court prosecutions and since Tennessee law does not differentiate in terms of punishment between crack cocaine and powder cocaine, a more detailed analysis is not usually conducted. However, after Petitioner changed his mind about pleading guilty, the drugs were resubmitted to Flowers who determined that the substance did in fact contain crack cocaine. (Trial Tr. at 162-66).

Flowers was rigorously cross-examined at trial about her findings. In fact, the cross-examination was almost twice as long as Flowers' direct examination.

The cocaine seized in the residence was examined by Saundra Franklin ("Franklin"), another forensic scientist at the TBI lab. After conducting an examination, she determined that the substance was 264 grams of cocaine, of which 14.3 grams was crack cocaine. Like Flowers, her initial report did not differentiate between cocaine and crack cocaine because, as she also explained, Tennessee law does not differentiate between the two in terms of penalties. After the drugs were resubmitted, she confirmed in her report that 14.3 grams was in fact crack cocaine. She, too, was effectively cross-examined about her findings.

Petitioner was convicted on all counts. His conviction and sentence of 240 months (the statutory mandatory minimum given the amount of drugs involved) was affirmed on appeal. United States v. Johnson, No. 03-6477 (6th Cir. May 5, 2005).

## II. STANDARD OF REVIEW

To prevail on a § 2255 motion, the Petitioner must establish either an error of constitutional magnitude that had a substantial and injurious effect or influence on his criminal proceeding, see Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), or the record must reflect a fundamental defect in the proceedings that inherently resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. Reed v. Farley, 512 U.S. 339, 348 (1994); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir. 1993). Claims of error must be raised in the trial court and on direct appeal or such

3

claims are procedurally defaulted. See Phillip v. United States, 229 F.3d 550, 552 (6th Cir. 2000).

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the Court "must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Petitioner is not entitled to an evidentiary hearing if the 2255 motion and the record of the case conclusively show that he is not entitled to relief. See Green v. United States, 65 F.3d 546, 548 (6th Cir. 1995). Finally, when the trial judge also hears the collateral proceedings, the judge may rely on his recollections of the prior proceedings in ruling on the collateral attack. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

### III. ANALYSIS

Petitioner asserts two grounds for relief. First, he claims counsel was ineffective in not obtaining an expert witness to challenge the findings that what he possessed and distributed was crack cocaine. Second, he claims that his sentence is unlawful because it is based upon an "illegal conviction."

**A. Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel, Petitioner must show that his trial or appellate counsel's performance was deficient and that the deficiency prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Evitts v. Lucey, 469 U.S. 387, 396 (1985). Petitioner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by

4

the Sixth Amendment, and that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him. Strickland, 466 U.S. at 687; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). A reasonable probability is one sufficient to undermine confidence in the outcome; it is a less demanding standard than "more likely than not." Id. A court need not address both parts of the Strickland test if the petitioner makes an insufficient showing on one. Strickland, 466 U.S. at 697.

In his Motion, Petitioner conclusorily asserts counsel was ineffective in failing to call an expert witness, even though "he requested it numerous times" and was assured that an independent chemist had been secured. (Docket Entry No. 1 at 5). Petitioner's counsel recalls things differently.

In an affidavit filed in connection with the Government's response, trial counsel, Thomas J. Drake, Jr. ("Drake"), states that he and his client discussed hiring an expert and Drake was initially going to retain an expert. (Drake Aff. ¶¶ 5-6). At one point, Petitioner voiced concern that any expert they brought to trial could confirm that which the Government was saying, i.e., the substances included crack cocaine. (Id. ¶ 5). In any event, after "a combination of discussions" with Petitioner, Drake ultimately decided against retaining an expert and opted instead to cross-examine the Government's chemists about the non-identification of cocaine base in the initial reports. (Id. ¶ 6). As a part of his decision, Drake took into consideration the expected evidence:

5

> Whether the substance was actually crack cocaine or powder cocaine . . ., [Petitioner] could be convicted without presentation of any drugs based on the undercover officer's testimony that he had bargained to buy 50 grams of crack cocaine from [Petitioner] and exchanged money for a bag which was supposed to contain the crack cocaine, along with other factors presented at trial, including a search of a house with crack cocaine cooking evident, video surveillance, and several officers who would testify about rolling surveillance of [Petitioner] during the time of the alleged purchase by the undercover officer.

(Id. ¶ 11).

"'A defendant's lawyer does not have a duty in every case to consult experts even if the government is proposing to put on expert witnesses. There may be no reason to question the validity of the government's proposed evidence or the evidence may be so weak that it can be demolished on cross-examination.'" Dugas v. Coplan, 428 F.3d 317, 329 (1st Cir. 2006)(citation omitted). "[I]n general, whether or not to hire an expert is the type of strategic choice by counsel that may not be second-guessed on habeas corpus review." Murden v. Artuz, 253 F.Supp.2d 376, 389 (E.D.N.Y. 2001). Hence, "'[w]here an expert would only marginally assist the jury in its role as fact finder, an attorney's decision not to call an expert is more likely to fall within the bounds of reasonable performance and less likely to prejudice the defendant.'" Massaro v. United States, 2004 WL 2251679 at *4 (S.D.N.Y. 2004)(citation omitted).

In this case, the Court cannot find that counsel was deficient in exercising the strategic choice not to enlist the assistance of an expert witness. Both of the forensic scientists were firm in

6

their assertions that the drug involved in the transaction with the agent was crack cocaine and that an identified portion of the drugs found in Petitioner's home was crack cocaine. Both scientists were subjected to effective cross-examination yet never wavered on their identification of the crack cocaine. As for their initial indication in the reports that the drugs at issue were simple powder cocaine, that was readily explained by the fact that the initial reports were done with a view towards state court prosecution where the distinction between crack and powder cocaine is of little, if any, significance. Counsel's decision not to risk confirming that which was already said by the Government's experts was not unreasonable.

Nor has Petitioner shown, as required by <u>Strickland</u>, that he was prejudiced by the lack of an expert witness, and he does not even suggest, let alone offer any proof, that he was not in possession of crack cocaine on the dates charged in the Indictment. Moreover, the jury was presented with more than sufficient evidence to determine, beyond a reasonable doubt, that Petitioner engaged in possessing and distributing crack cocaine as charged. Such evidence included not only the TBI scientists' unshaken testimony about the crack cocaine, but it included circumstantial evidence as well.

The deal between Petitioner and the TBI agent was for the sale and purchase of "hard and ready" cocaine, that is crack and not powder cocaine. (Trial Tr. at 65). When the cocaine was delivered on October 23, 2001, it was still wet and was in the process of

7

drying, which suggested that it had just been manufactured from powder into crack cocaine. (Trial Tr. at 73-74). Leatrice Malone, Defendant's acquaintance, testified at trial that he was a crack cocaine user and purchased crack cocaine from Petitioner. (Trial Tr. at 74). On October 23, 2001, he rode with Petitioner to the site of the transaction, and it was he who reached under the seat of Petitioner's vehicle and retrieved the crack cocaine which was then handed to the agent. This combined evidence could readily lead a jury to conclude that Petitioner was dealing in crack cocaine and not simply powder cocaine. See, Sims v. United States, 1999 WL 1000855 at *2 (6th Cir. 1999)("Counsel did not render ineffective assistance because the government proved, by a preponderance of the evidence, that the substance involved was crack cocaine").

Given the foregoing, Petitioner is not entitled to any relief on his claim that counsel was ineffective in failing to utilize an expert witness in an effort to establish he did not possess or deal crack cocaine.

**2. Motion to Vacate Sentence**

In his second claim in his Section 2255 Motion, and also as a separate motion for re-sentencing, Petitioner argues he is entitled to be sentenced anew on the grounds that a state court conviction which was used to enhance his sentence "has been in fact been [sic] rebutted/invalidated through Constitutional and commercial grounds." (Docket Entry No. 2 at 1). To describe this claim is to show how utterly meritless it is.

8

Petitioner was previously convicted on a state court charge of possession with intent to distribute cocaine. Since he was on probation for that charge at the time of the instant offenses, he received two additional criminal history points under U.S.S.G. § 4A1.1(d).

Petitioner now claims the state court conviction is invalid inasmuch as it constitutes a lien on his body. That lien has been expunged under the Uniform Commercial Code through Petitioner's filing of duly recorded Financing Statements and, more particularly, his return of his state court judgment with the notation: "ACCEPTED FOR VALUE AND RETURNED FOR VALUE. REQUESTS THE TITLE/ORDER OF THE COURT BE RELEASED TO ME FORTHWITH. ALL PUBLIC CHARGES TO BE DISCHARGED VIA THE EXEMPTION OR WAIVED." (Docket Entry No. 2, Ex. D). Though provided with a "Letter Rogatory" (id, Ex. A) and a "Notice of Dishonor and Opportunity to Cure," (id., Ex. H(1)), neither the State Attorney General, the Rutherford County Circuit Judge or the Rutherford Attorney General made any effort to challenge Petitioner's assertion pursuant to the remedies provided by the Uniform Commercial Code.

Petitioner's unilateral attempt to transmogrify a state criminal conviction into a dischargeable lien or negotiable instrument under the Uniform Commercial Code is as creative as it is frivolous. His motion for resentencing will be denied.

### IV. CONCLUSION

On the basis of the foregoing, Petitioner's "Motion to Vacate, Set Aside, Reverse, or Correct Sentence Pursuant to Title 28 United

9

States Code Section 2255" (Docket Entry No. 1) will be denied, as will Petitioner's "Motion for Resentencing Upon Invalidating of Prior Conviction" (Docket Entry No. 2). This case will be dismissed with prejudice and a Certificate of Appealability will not issue.

    An appropriate Order will be entered.

                                                ROBERT L. ECHOLS
                                                UNITED STATES DISTRICT JUDGE

10

Case 3:06-cv-00763   Document 11   Filed 06/27/07   Page 10 of 10 PageID #: 93